# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| LEONARDO RODRIGUEZ, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-cv-0372 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| CITY OF CHICAGO, HUMAN RESOURCES BOARD OF THE CITY OF CHICAGO, SALVADOR A. CICERO, Chairman, SAMUEL L. EVANS Jr., Member, KAREN COPPA, Member, and ROGER J. BALLA, Hearing Officer | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Leonardo Rodriguez brings this action against the City of Chicago (the "City"), his former employer; the City's Human Resources Board (the "HRB"); the HRB's chairman, Salvador A. Cicero; a member of the HRB, Samuel L. Evans Jr.; and a hearing officer at the HRB, Roger J. Balla. Plaintiff alleges that Defendants subjected him to an unconstitutional drug test and used that test as a basis to terminate his employment with the City. He seeks reinstatement to his former position with the City, among other relief, pursuant to this Court's authority under the Illinois common law writ of certiorari (Count I), and 42 U.S.C. § 1983 (Count II).

Currently before the Court are Plaintiff's motion for summary judgment on Count I [34] and the City's motion for summary judgment on Count II [31]. In this opinion, the Court addresses only the federal claims in Count II on the merits. For the reasons set forth below, the Court grants the City's motion for summary judgment [31] on Count II. As Count II represents the sole basis for this Court's federal jurisdiction, Plaintiff's petition for certiorari under Illinois law in Count I is dismissed without prejudice pursuant to the "usual practice" in the Seventh Circuit when "all

federal claims have been dismissed prior to trial." Consequently, Plaintiff's motion for summary judgment [34] is denied without prejudice with leave to refile in state court. The Court shall enter judgment in favor of Defendant and against Plaintiff on Count II. Finally, Plaintiff's motion for oral argument [52] is denied as moot.

I. Background[1]

The Court takes the relevant facts from the parties' Local Rule 56.1 statements of undisputed material facts and supporting exhibits: [33], [36], and [37]; and the underlying administrative record from the City of Chicago's Human Resources Board (the "HRB") [17]. The Court construes the facts in the light most favorable to the nonmoving party—here, Plaintiff. The following facts are undisputed unless otherwise noted. "When we cite as undisputed a statement of fact that a party has attempted to dispute, it reflects our determination that the evidence cited in the response does not show that the fact is in genuine dispute." *King v. Chapman*, 2013 WL 6709623, at *3 (N.D. Ill. Dec. 16, 2013).

The Court has jurisdiction over Count II pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 because Plaintiff asserts a claim against the City under 28 U.S.C. § 1983. [37-1, ¶¶ 1–5.] Venue is proper in this District because the alleged events giving rise to Plaintiff's claims occurred within the Northern District of Illinois.

Plaintiff is a 51-year-old man who was employed by the City of Chicago until he was discharged in the administrative proceedings before the HRB. [33, ¶ 1]; [36, ¶ 1]. The City is a municipal corporation located in Cook County, Illinois. [33, ¶ 2.] From 1998 until the events at issue in this case, Plaintiff was employed as a Production Assistant with the Chicago Department of Cultural Affairs & Special Events ("DCASE"). [33, ¶ 4.] His duties included (1) performing

---

[1] Because the Court only addresses Plaintiff's claims in Count II, the Court has not included facts relevant to Count I alone.

various manual labor and routine clerical tasks (such as loading/unloading and delivering heavy furniture and equipment); (2) assembling and setting up stage production sets, tables, chairs, *etc.* for City events (such as festivals)—which required the operating of hand and power tools; (3) processing outgoing mail; and (4) sorting and distributing incoming mail. [*Id.*] Additionally, Plaintiff regularly drove DCASE Commissioner Mark Kelly and occasionally other DCASE employees. [*Id.* ¶ 5.] Given these responsibilities, DCASE required Plaintiff to maintain a valid State of Illinois driver's license. [*Id.*] Plaintiff reported to John Trick, his immediate supervisor, and Jose Chao ("Chao"), DCASE's Director of Facilities. [*Id.* ¶ 6.]

Lisa Lorick ("Lorick") has been DCASE's Assistant Commissioner since July 2004. Lorick serves as DCASE's Director of Human Resources and is responsible for all personnel matters, including discipline, timekeeping, payroll, benefits, labor relations, and training and development. [*Id.* ¶ 7.] Plaintiff, Chao, and Lorick all worked at the DCASE's main office—the Chicago Cultural Center, which is located at 55 E. Washington Street, Chicago, Illinois 60602. [*Id.* ¶ 9.]

### A. City Policies, Practices, and Procedures

The City has a city-wide Drug and Alcohol Testing Policy (the "Policy") that applies to all of its employees. [*Id.* ¶ 10] Under the Policy, the City may require an employee to undergo drug and/or alcohol testing under three circumstances: (1) when there is a reasonable suspicion that the employee has used drugs or alcohol or is under the influence of drugs or alcohol while at work, on City property, or on City business; (2) if the employee is involved in a fight while at work, on City property, or on City business; or (3) if an "an employee [is] involved in an accident which results in significant injury requiring medical attention or significant property damage while at work, on City property or on City business." [*Id.* ¶ 10; 17-2, at 72.] The City enacted the Policy in July 1993 and has not changed the Policy's language regarding post-accident testing since that time.

[33, ¶ 11.] An employee who tests positive for drugs and/or alcohol or refuses to cooperate with testing procedures is terminated for a first offense. [*Id.* ¶ 17.] A refusal of a drug test is treated as a positive test. [*Id.*] Plaintiff acknowledged that he received a copy of the Personnel Rules sometime around 2000 and that he was generally aware that the City had a drug and alcohol policy. [*Id.* ¶ 19.] However, Plaintiff also stated that he had been unaware of the Policy's post-accident testing standard. [*Id.*]

### B. March 10, 2017 Accident & Drug Test

On Friday, March 10, 2017, Plaintiff was assigned to drive a van of nine DCASE employees from the Chicago Cultural Center to the Clarke House Museum, approximately two miles away. [*Id.* ¶ 20.] One of those DCASE employees was approximately seven and a half months pregnant. [*Id.*] The Clarke House Museum trip marked the fourth time Plaintiff had driven that week. [*Id.*] Chao planned to drive a second City vehicle to the Clarke House Museum. [*Id.* ¶ 21.]

Plaintiff left the Chicago Cultural Center at approximately 10:45 a.m. Moments later, the vehicle driven by Plaintiff was involved in an accident with another vehicle as he attempted to make a right turn onto Michigan Avenue from Washington Street. The other vehicle was driven by Keianna Stone ("Stone"), a non-City employee. The accident occurred sometime between 10:50 a.m. and 11:00 a.m. Plaintiff was in the outside lane when he was attempting to make a right turn onto Michigan Avenue, and Stone was in the inside lane. The inside lane was partially blocked by cones due to construction, and as a result, Stone made an extra wide turn to avoid the cones and made contact with the City vehicle. Plaintiff informed Chao that he had been involved in an accident, and Chao came to the scene of the accident. At that time, Chao observed damage to both the City vehicle and the other vehicle. Chao took most of the passengers who had been

4

riding in Plaintiff's vehicle with him and drove them the rest of the way to the Clarke House Museum. [*Id.* ¶¶ 22–24.]

Before he left, Chao instructed Plaintiff to report the accident to the Chicago Police Department and not to leave the scene of the accident until a police report was generated; Plaintiff did as instructed. [*Id.* ¶ 25.] By 11:10 a.m., Officer Mark Mirabelli arrived on scene and spoke to both Plaintiff and Stone in order to determine what had occurred. He examined both vehicles and completed an Illinois Motorist Report, *i.e.*, a police report. [*Id.* ¶ 26.] Officer Mirabelli provided Plaintiff a copy of the police report at the scene of the accident. [*Id.* ¶ 29.]

Within approximately an hour (and no later than 12:30 p.m.), Lorick became aware of Plaintiff's accident and called him in for a meeting. [*Id.* ¶ 30.] Chao, and later Trick, were also present for the meeting. [*Id.*] Chao attended the meeting as Plaintiff's supervisor, and not as a witness to the accident. [*Id.*] During the meeting, Lorick brought up the Policy and drug testing under the post-accident prong of the Policy. [*Id.* ¶ 33.] While Lorick and Plaintiff disagree exactly where the following conversation took place, Plaintiff testified before the HRB that after Lorick explained that she was going to have to send him for testing Plaintiff admitted that he might have a hot drop and admitted that he had previously consumed drugs.[2] [17-4, at 76:17–77:16, 78:7–16.] However, Plaintiff did not provide all the specifics of the drug use until the following Monday, which was after he took the drug test. [*Id.* at 77:21–78:2.]

After the conversation, Lorick informed Plaintiff that he had the option to undergo testing or to refuse testing, but that a refusal would be considered a positive drug test. [33, ¶ 36.] Chao proceeded to read the Voluntary Consent and Notice of Physical and/or Drug or Alcohol Testing forms out loud to Plaintiff. [*Id.* ¶ 37.] Plaintiff then signed the forms. [*Id.*]

---

[2] Plaintiff's objection to the inclusion of any facts suggesting that Plaintiff admitted to the drug use and the Court's reliance on these facts are addressed below in Section III(A)(1) *infra*.

5

Immediately after the meeting, Chao and Trick accompanied Plaintiff to U.S. Healthworks' Downtown Clinic at 614 West Monroe, Chicago, Illinois to undergo drug testing. Upon their arrival, one of the men provided U.S. Healthworks' staff with a copy of the signed Notice of Physical and/or Drug or Alcohol Testing form and they completed the necessary registration forms. [*Id* ¶ 38.]

It took Plaintiff several hours to provide a urine sample. [*Id.* ¶ 41.] Shavone McKinley-Jenkins, a patient registrar/medical assistant with U.S. Healthworks, collected Plaintiff's urine sample ("specimen") at around 3:20 p.m. [*Id.* ¶ 39.] Plaintiff provided his urine sample in a controlled environment in the collection room, a private bathroom-like area with two separate stalls located in the back of the clinic. [*Id.* ¶ 40.] The collection room was not accessible by the public, and no individuals other than Plaintiff entered and/or exited the collection room during the collection process. [*Id.*]

### C. Termination and HRB Proceedings

On April 7, 2017, the City served Plaintiff with Statement of Charges and Explanation of Evidence ("Charges") charging him with violating the City of Chicago Personnel Rule XVIII, Section I, Subsections 14, 15, 24, 36, 50, and 51 because on or about March 10, 2017, the results of Plaintiff's drug and/or alcohol test(s) were positive for cocaine metabolites and marijuana metabolites, and thus, on or about March 10, 2017, Plaintiff was in possession of illegal drugs; and/or reported to work under the influence of illegal drugs; and/or used illegal drugs; and/or tested positive for illegal drugs. Plaintiff had an opportunity to respond to the Charges, and on April 13, 2017, he did so. [*Id.* ¶ 63.]

Plaintiff continued to work until he was served with the Charges; however, he was no longer allowed to drive after March 10, 2017. On April 14, 2017, Plaintiff was discharged from the DCASE for his March 10, 2017 post-accident positive drug test. Plaintiff went on no-pay

status as of that date. On April 18, 2017, Plaintiff filed his written request for a hearing with the HRB. [*Id.* ¶¶ 64–66.]

HRB Hearing Officer Roger Balla presided over three days of hearing on June 8, 2017, July 13, 2017, and July 28, 2017. [*Id.* ¶ 67.] On September 2, 2017, Balla issued his Hearing Officer's Report, in which he concluded that the City had proved by a preponderance of evidence that Plaintiff had violated Personnel Rule XVIII, Section I, Subsections 14, 15, 36, 50, and 51 and that the City did not prove by a preponderance of the evidence that Plaintiff had violated Personnel Rule XVIII, Section I, Subsection 24. Accordingly, he recommended the HRB uphold Plaintiff's discharge. [*Id.* ¶ 69.] On October 17, 2017, the HRB heard oral arguments by the parties, and on or about October 24, 2017, the HRB upheld Plaintiff's discharge. [*Id.* ¶ 70]

D. **Procedural History**

On December 27, 2017, Plaintiff filed a two-count complaint in the Circuit Court of Cook County, 2017 CH 17019, seeking reversal of the HRB's decision under a common law writ of certiorari (Count I) and asserting claims under the Illinois and federal constitutions (Count II). [1-1, 1–11.] On January 18, 2018, the City removed the suit to this court. [1.] On August 17, 2018, the City moved for summary judgment on Count II. [23.] The same day, Plaintiff moved for summary judgment on Count I. [34.]

II. **Summary Judgment Standard**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). Rule 56 makes clear that whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine

7

dispute or that the adverse party cannot produce admissible evidence to support the fact. *Id.* In determining whether summary judgment is appropriate, the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor (here, Plaintiff). *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (citation omitted). But Plaintiff "is only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture.'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation and quotation marks omitted). Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party would bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, the moving party may meet its burden by pointing out to the court that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 324.

It is not the role of the Court to scour the record in search of evidence to defeat a motion for summary judgment; instead, the nonmoving party bears the responsibility of identifying evidence to defeat summary judgment. *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). To avoid summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). For this reason, the Seventh Circuit has called summary judgment the "put up or shut up" moment in a lawsuit—"when a party must show what evidence it has that would convince a trier of fact to accept its version of events." See *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007). In other words, the party opposing summary judgment "must do more than simply show that there is some

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

**III. Analysis**

Plaintiff has moved for summary judgment on his claim for a writ of certiorari in Count I, while Defendants' have moved for summary judgment on the constitutional claims pursuant to 42 U.S.C. § 1983 in Count II. Because the constitutionality of the City's search of Plaintiff informs the Court's analysis of the petition for certiorari, the Court begins with Defendants' motion on Count II.

**A. Count II – 42 U.S.C. § 1983[3,4]**

The City seeks summary judgment on Count II asserting that Plaintiff has failed to produce facts upon which a reasonable fact finder could conclude that the City violated Plaintiff's constitutional rights by compelling him to submit to a drug test. Plaintiff disagrees.

**1. Plaintiff's drug test was constitutional**

42 U.S.C. § 1983 does not provide a source of tort liability; rather, it creates a cause of action for "'the deprivation, under color of [state] law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States.'" *Narducci v. Moore*, 572

---

[3] As Plaintiff concedes, the evidence before the Court on the § 1983 claim is not limited to the question of what was before the HRB, but rather includes all the evidence set forth by the parties. Thus, the Court must examine all the all the evidence before it to determine whether Plaintiff's constitutional rights were violated, and not simply the administrative record.

[4] Because § 1983 only provides a right of action for violations of federal law, see *Flynn v. Sandhal*, 58 F.3d 283, 290 (7th Cir. 1995), the Court cannot consider any claims for violations of the Illinois Constitution under that count. And, in any event, it appears there is no private right of action under Article I, Section 2 or Section 6 of the Illinois Constitution. See, e.g., *Bonnstetter v. City of Chicago*, 2014 WL 3687539, at *6 (N.D. Ill. July 24, 2014) (collecting cases), aff'd, 811 F.3d 969 (7th Cir. 2016).

F.3d 313, 318–19 (7th Cir. 2009) (quoting *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir.1997)). The statute is a means of vindicating rights guaranteed elsewhere. *Narducci*, 5872 F.3d at 319. Here, Plaintiff asserts that the drug test the City forced him to take violated his rights under the Fourth Amendment.[5]

A urine test, like the one Plaintiff submitted to here, constitutes a search under the Fourth Amendment when ordered or conducted by the government as an employer. *Skinner v. Railway Labor Exec. Ass'n*, 489 U.S. 602, 617 (1989). However, that is only the beginning of the inquiry. *Id.* at 618–19. The Fourth Amendment "does not proscribe all searches and seizures, but only those that are unreasonable." *Id.* at 619. As the Seventh Circuit has explained, "[t]he touchstone of Fourth Amendment inquiry is reasonableness, a standard measured in light of the totality of the circumstances and determined by balancing the degree to which a challenged action intrudes on an individual's privacy and the degree to which the action promotes a legitimate government interest." *Green v. Butler*, 420 F.3d 689, 694 (7th Cir. 2005). Under this reasonableness standard, "both the inception and the scope of the intrusion must be reasonable." *O'Connor v. Ortega*, 480 U.S. 709, 726 (1987).[6]

The City argues that because Plaintiff's test was carried out in accordance with the Policy, pursuant to the City's special needs related to public safety and as an employer, the search was constitutional. *Skinner*, 489 U.S. at 620–21 (concluding railroad safety constituted a special need); *O'Connor v. Ortega*, 480 U.S. 709, 725 (1987) (noting special needs in the employment context).

---

[5] Plaintiff also argues that the Policy violates the Due Process Clause of the Fourteenth Amendment because, *inter alia*, it is unconstitutionally vague, and because it vests too much discretion to determine who to test in his supervisors. See [44, at 2–7.] However, the Court need not reach those arguments because it concludes that Plaintiff's supervisor, Lorick, had reasonable suspicion to justify the drug test under the Fourth Amendment.

[6] Plaintiff has not suggested the test itself was unreasonable, but rather asserts that the fact that he was required to submit for a urinalysis at all was unconstitutional.

Plaintiff argues that the Policy is unconstitutional, and that in any event, the incident involving Plaintiff did not qualify for post-accident testing.

As an initial matter, whether a search is carried out in accordance with or contrary to municipal policy is immaterial to the determination of whether that search was unconstitutional. See, e.g., *Virginia v. Moore*, 553 U.S. 164, 176 (2008) (refusing to invalidate an arrest that violated Virginia law but was reasonable under the Fourth Amendment because "linking Fourth Amendment protections to state law would cause them to 'vary from place to place and from time to time'") (citation omitted); *United States v. Brown*, 871 F.3d 532, 537 (7th Cir. 2017) ("a police officer's compliance with the rules of his department is neither sufficient nor necessary to satisfy the Fourth Amendment's reasonableness requirement"); *Benavidez v. City of Albuquerque*, 101 F.3d 620, 625 (10th Cir. 1996) (dismissing the argument that the court should overturn an employee's termination because city policy placed a higher standard on searches than the Fourth Amendment). Rather, the court must examine the totality of the circumstances to determine if the search was reasonable. *Ohio v. Robinette*, 519 U.S. 33, 39 (1996) ("the 'touchstone of the Fourth Amendment is reasonableness.' [ ] Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances.") (citation omitted). Thus, the question is solely whether the City had reasonable suspicion of drug use, or a special need that outweighed Plaintiff's privacy interests, such that it could conduct a warrantless urine test of Plaintiff.

Generally, drug testing must be based upon individualized suspicion or wrongdoing to be considered reasonable. *Krieg v. Seibold*, 481 F.3d 512, 517 (7th Cir. 2007) (citing *Chandler v. Miller*, 520 U.S. 305, 313 (1997)). However, the Supreme Court has noted exceptions to that rule "when 'special needs, beyond the normal need for law enforcement, make the warrant and probable cause requirement impracticable.'" *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987) (quoting *New*

*Jersey v. T.L.O.*, 469 U.S. 325, 351 (1985)). "When faced with such special needs, [the Court] has not hesitated to balance the governmental and privacy interests to assess the practicality of the warrant and probable-cause requirements in the particular context." *Skinner*, 489 U.S. at 619.

For example, courts have widely permitted on safety grounds suspicion-less, and even random, drug testing of public employees who work with large, mobile equipment. See, e.g., *Skinner*, 489 U.S. at 608–10, 632–33 (upholding regulations requiring any railroad employee involved in certain kinds of accidents to submit to a toxicological urine test); *Krieg*, 481 F.3d at 517–519 (concluding an employee who regularly operated heavy equipment was a in a "safety sensitive" position and could be subjected to random drug testing); *Bluestein v. Skinner*, 908 F.2d 451, 453–54, 457 (9th Cir. 1990) (holding FAA regulations requiring random drug testing for members of the aviation industry did not fall afoul of the Fourth Amendment). Relatedly, the Supreme Court has approved of suspicion-less drug testing as a condition of placement or employment for certain positions where drug use would be especially concerning. *Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656, 660–61, 666 (1989).

Although the parties' briefs principally examine this "special need" exception to the Fourth Amendment's warrant and reasonable suspicion requirements and whether the City's Policy and Plaintiff's testing pursuant to it is constitutional, those arguments are beside the point if, as Defendants assert, the City had reasonable suspicion to require Plaintiff to submit to urinalysis. Multiple courts of appeals have upheld warrantless drug testing when a government employer has "reasonable, articulable grounds to suspect an employee of illegal drug involvement."[7] *Ford v. Dowd*, 931 F.2d 1286, 1289 (8th Cir. 1991); see also *Benavidez v. City of Albuquerque*, 101 F.3d

---

[7] Similarly, the Policy states, "The city may require testing of an employee for whom there is a reasonable suspicion that the employee has used drugs or alcohol or is under the influence of drugs or alcohol while at work, on City property or on City business."

620, 624 (10th Cir. 1996) ("[D]rug testing of a government employee does not require a warrant, but must be based on individualized suspicion, *i.e.*, a reasonable suspicion that the employee was engaging in unlawful activity involving controlled substances."); *Roberts v. City of Newport News*, 36 F.3d 1093 (4th Cir. 1994) (same); *Drake v. Delta Air Lines, Inc.*, 147 F.3d 169, 172 (2d Cir. 1998) (same). The Seventh Circuit has similarly recognized that a special needs analysis is not appropriate where an individual is tested based on a supervisor's particularized suspicion of an employee's drug use. *Taylor v. O'Grady,* 888 F.2d 1189, 1198 n.9 (7th Cir. 1989). Thus, before considering whether the City had a "special need" to conduct the drug test, the Court turns to whether the City had individualized, reasonable suspicion of Plaintiff's drug use.

First, the Court must address Plaintiff's argument that the Court is limited to considering only the justification that Lorick checked on the City's testing form—"post-accident"—when she sent Plaintiff to be drug tested. Plaintiff's argument goes against the reasoning, if not the holding, of *Devenpeck v. Alford*, 543 U.S. 146 (2004). In *Devenpeck*, two Washington state police officers arrested the defendant without a warrant, asserting that they had probable cause he had violated Washington's Privacy Act. *Id.* at 148–51. At the time they made the arrest, the officers also allegedly had probable cause to charge him for impersonating a police officer and making a false representation to an officer. *Id.* at 150. However, because the State Patrol had a policy against "stacking charges," at booking the arresting officer only charged the defendant with the Privacy Act violation and ticketed him for having impermissible flashing headlights. *Id.* at 150–51.

After the state trial court threw out the charges, the defendant filed suit against the officers alleging that the arrest had violated his Fourth Amendment rights. *Id.* at 151. The trial court dismissed the lawsuit, but the Ninth Circuit reversed on the ground that the officers could not have had probable cause for the Privacy Act charge as a matter of law and that they could not justify

13

the arrest based on probable cause for crimes not "closely related" to the Privacy Act charge—*i.e.*, the impersonation and false representation charges. *Id.* at 151–52. The Supreme Court rejected the Ninth Circuit's rationale, concluding that a warrantless arrest is reasonable so long as at the time of the arrest, the arresting officers have probable cause to conclude that some criminal act has been committed. *Id.* at 152–56.

The City's position here is directly analogous. Regardless of which box Lorick checked on the form to justify Plaintiff's drug test, if the objective facts before her at the time that she directed Plaintiff to submit to the drug test were objectively sufficient to provide reasonable suspicion of illegal drug use, then the drug test does not run afoul of the Fourth Amendment. To determine if Lorick had a reasonable suspicion of drug use, the Court must examine the totality of the circumstances. *Colbert v. Willingham*, 2015 WL 3397035, at *4 (N.D. Ill. May 26, 2015), aff'd sub nom. *Colbert v. City of Chicago*, 851 F.3d 649 (7th Cir. 2017) ("Reasonable suspicion is 'a fact-specific inquiry that looks at the totality of the circumstances in light of common sense and practicality.'") (quoting *United States v. Richmond*, 641 F.3d 260, 262 (7th Cir. 2011))

In the administrative hearing, Lorick testified that when she informed Plaintiff of the policy pursuant to which he would have to go for drug testing, he pushed back and asked if they could speak out in the hall. [17-5, at 127:21–128:7.] After they stepped into the hallway, Lorick asserts that Plaintiff informed her that he did not want to go to the drug testing because he would have a "hot drop." [*Id.* at 128:24–129:3; 129:11–14.] When Lorick pressed him on what he meant, Plaintiff explained that the drop would be "dirty," which Lorick understood to mean that any drug test of Plaintiff would come back positive. [*Id.* at 129:13–19.]

14

Although Plaintiff disputes that he and Lorick stepped out into the hall to discuss the issue, [17-4; at 76:17–77:7], Plaintiff admitted in the HRB proceedings that on March 10, 2017 he told Lorick that he might test positive for drugs:

> Q. Okay. And in a conversation with Ms. Lorick that day [March 10, 2017], didn't you tell her that you did not want to go because you would test "hot"
>
> A. At one point I said I might test hot, yes.
>
> Q. And you told her that you had partied over the weekend?
>
> A. There was some reference to something that happened while not at work, yes.

[*Id.* at 77:8–16.] By volunteering that he might test positive for drugs and that he had partied over the weekend, Plaintiff gave Lorick, and by extension the City, probable cause to order the urine test. See, e.g., *Wrightsell v. City of Chicago*, 1989 WL 106608, at *2 (N.D. Ill. Sept. 7, 1989) (concluding the city had reasonable suspicion to test police officer for drugs after officer's girlfriend informed a police sergeant that he had snorted cocaine in her presence two days earlier, even though the testing did not occur until more than 10 days after the officer had allegedly taken the drugs).

Whether or not Plaintiff made these statements after Lorick signed the paperwork sending him to be tested [see 17-4, at 78:7–16] would not change the analysis. The search of Plaintiff did not occur until (at the earliest) he was taken to U.S. Healthworks' Downtown Clinic for testing, if not until he actually provided the sample. Moreover, the fact that Plaintiff informed Lorick that any drug test might come back positive suggests that he believed no final decision had been made regarding the test and that Lorick could still change her mind. Indeed, common sense dictates that Plaintiff initiated the discussion about the prospect of a "hot" test in the hope that Lorick might give him a break by postponing (or waiving) the test. Of course, Plaintiff's admission placed Lorick in a difficult spot to say the least, for if she had looked the other way, she might have

15

jeopardized her own job (and public safety) if Plaintiff had used drugs again and then gotten into a more serious accident. Furthermore, nothing would have stopped Lorick from discarding the initial testing form that she had just prepared and writing up a new order sending Plaintiff for testing based upon reasonable suspicion.[8]

The axiomatic rule that evidence gathered after a search cannot be used to justify the search post-hoc, see, e.g., *Whitley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 565 n.8 (1971), does not support a different result. This incident is no different than if an individual, in response to an officer's statement that he needed to search the car, admitted that a search of the car might result in the discovery of an illegal firearm or drugs. See, e.g., *United States v. Loranger*, 2007 WL 5323765, at *2 (W.D. Wis. Sept. 11, 2007) (refusing to suppress evidence because, *inter alia*, "before the search began, Loranger admitted that the officers would find marijuana at his place. Defendant volunteered probable cause to believe that evidence of a crime would be found on the premises."). Even if Lorick could not have tested Plaintiff pursuant to Policy's post-accident provision, a question the Court does not reach, Plaintiff volunteered the reasonable suspicion necessary to test him by making the comments outlined above. Consequently, his urine test did not violate the Fourth Amendment.[9]

---

[8] Lorick's failure to write up a new order—and her general unfamiliarity with the requirements and contours of the Fourth Amendment jurisdiction—is precisely why the Supreme Court has not required strict compliance with the Fourth Amendment's warrant procedures in government employer testing cases. See, e.g., *Skinner*, 489 U.S. at 623 ("The Government's need to rely on private railroads to set the testing process in motion also indicates that insistence on a warrant requirement would impede the achievement of the Government's objective. * * * Railroad supervisors * * * are not in the business of investigating violations of the criminal laws or enforcing administrative codes, and otherwise have little occasion to become familiar with the intricacies of this Court's Fourth Amendment jurisprudence.)

[9] Because the Court concludes that Plaintiff's drug test was constitutional based on Lorick's reasonable suspicion, it need not, and does not, address the substantial and numerous questions regarding whether he could be tested under the City's "post-accident policy." Nor does the Court address whether a challenge to his testing under that provision would be a facial or as as-applied challenge.

### 2. Plaintiff May Not Raise a New Due Process Claim in His Summary Judgment Brief

Plaintiff's complaint focused solely on the allegedly unconstitutional search as the source of his § 1983 complaint. See [1-1, 7–11.] He did not assert that his termination proceedings violated the Due Process Clause. In his response to the City's motion, however, Plaintiff argues for the first time that the drug testing report and other evidence were impermissibly entered into evidence before the HRB in violation of his due process rights. See [44, at 17–20.] Whether evidence was properly before the HRB does implicate the right to due process. See *Pettigrew v. U.S. Dep't of Labor*, 40 F. App'x 289, 290 (7th Cir. 2002) (addressing and dismissing petitioner's claim that the Department of Labor wrongly considered evidence submitted by his federal employer). But the more fundamental problem with this contention is the absence of any mention of such a claim in Plaintiff's complaint. The entire focus of Count II in Plaintiff's complaint was that the City's post-accident policy—and thus Plaintiff's compelled test pursuant to that policy—were unconstitutional. He has never placed the City on notice of a claim that the termination proceeding themselves deprived him of due process, and he cannot spring such a claim on the City in a brief in opposition to a motion for summary judgment. *Cf. Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) (it is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss").

### B. Count I – Writ of Certiorari

For the reasons stated above, the Court grants the City's summary judgment motion [31] as to Count II. Because that disposition results in the dismissal of all claims over which the Court has original jurisdiction, see 28 U.S.C. § 1367(c)(3), the Court must address whether to retain jurisdiction over the state law claim in Count I and resolve Plaintiff's motion for summary judgment.

As the Seventh Circuit consistently has stated, "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.,* 193 F.3d 496, 501 (7th Cir. 1999); see also *Williams v. Rodriguez,* 509 F.3d 392, 404 (7th Cir. 2007) ("As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pendant state claims"); *Wright v. Associated Ins. Cos.,* 29 F.3d 1244, 1251 (7th Cir.1994) ("the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendant state-law claims rather than resolving them on the merits"). Yet the court of appeals has discussed "three well-recognized exceptions" to the general rule that "when all federal-law claims are dismissed before trial, the pendent claims should be left to the state courts." *Wright,* 29 F.3d at 1252. As the court has explained, occasionally there are "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity— will point to a federal decision of the state-law claims on the merits." *Id.*

The first example that the court discussed occurs "when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court." *Wright*, 29 F.3d at 1251. That concern is not present here, however, because Illinois law gives Plaintiff one year from the dismissal on jurisdictional grounds of state law claims in federal court in which to refile those claims in state court. See 735 ILCS 5/13–217; see also *Sharp Electronics Corp. v. Metropolitan Life Ins. Co.*, 578 F.3d 505, 514–515 (7th Cir. 2009); *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008).

The second exception recognized in *Wright* applies when "substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial

duplication of effort." 29 F.3d at 1251 (quoting *Graf v. Elgin, Joliet & E. Ry. Co.,* 790 F.2d 1341, 1347–48 (7th Cir.1986)). Here, although the Court has devoted significant resources to the disposition of the federal claim on summary judgment, it has not delved deeply into the state law claims. See *Davis,* 534 F.3d at 654 ("the district court disposed of the federal claims on summary judgment, and so 'substantial judicial resources' have not yet been committed to the case"). Although the Court has determined on its own plenary review of the testimony within the HRB record and other evidence submitted to it that the search of Plaintiff did not violate the Fourth Amendment, it has not examined the underlying HRB decision at all. Thus, while there clearly are instances in which "a district court *should* exercise supplemental jurisdiction over pendent state law claims for reason of judicial efficiency," *Miller Aviation v. Milwaukee County Board of Supervisors,* 273 F.3d 722, 732 (7th Cir. 2001), this is not one of them.

The third circumstance to which the court of appeals has pointed in which disposition of pendent state law claims may be appropriate "occurs when it is absolutely clear how the pendent claims can be decided." *Wright,* 29 F.3d at 1251. For example, "[i]f the district court, in deciding a federal claim, decides an issue dispositive of a pendent claim, there is no use leaving the latter claim to the state court." *Id.* In addition, if the state-law claims are "patently frivolous," they should be resolved right away in the federal court. *Id.* However, "[i]f the question whether a state-law claim lacks merit is not obvious, comity concerns may dictate relinquishment of jurisdiction." *Id.* In a previous decision regarding a directly analogous constitutional claim and petition for writ of certiorari, the Court observed

> Here, although the state and federal claims arise out of the same factual scenario, the legal analysis is very different and the fact that the Court has determined that Plaintiff's constitutional claims cannot survive summary judgment says very little about the proper disposition of state law claims asking the Court to issue a writ of certiorari directed at the City of Chicago Personnel Board and a writ of mandamus ordering the City to comply with certain rules and to reinstate Plaintiff to his prior

19

> position. Both of those requests implicate state law processes—certiorari and mandamus—with which federal courts do not often deal and as to which the proper disposition is "not obvious" on the basis of the Court's limited review of the claims to date. [ ]

*Patrick v. City Of Chicago*, 662 F. Supp. 2d 1039, 1069 (N.D. Ill. 2009); see also *Anderson v. Iacullo*, 963 F. Supp. 2d 818, 840–41 (N.D. Ill. 2013) (declining to retain jurisdiction where the court's "resolution of * * * the federal claim does not make 'clearly apparent' how the common law claim for writ of certiorari should be resolved"). As in *Patrick* and *Anderson*, the fact that the Court has determined that the Plaintiff's drug test was constitutional does not dispose of Plaintiff's arguments regarding the HRB's consideration of allegedly inadmissible evidence, or whether the HRB made the necessary findings to support its conclusions.

In sum, the Court concludes that none of the exceptions to the "usual practice" applies in this case. Accordingly, the Court denies Plaintiff's motion for summary judgment without prejudice and dismisses Count I with leave to refile both in state court.

## IV. Conclusion

For the forgoing reasons, the City's motion for summary judgment on the sole federal claim in Count II [31] is granted. The state law claim raised in Count I of Plaintiff's complaint is dismissed without prejudice, and Plaintiff's motion for summary judgment on that count [34] is denied without prejudice to refiling in state court.

Dated: March 27, 2019

_____
Robert M. Dow, Jr.
United States District Judge

20